CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 05 2021
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| KAREN DELORES TURNER, | )<br>) |
| Plaintiff, | )<br>) Civil Action No. 4:20cv00041<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| WALMART STORES EAST, LP, and<br>WALMART, INC. | ) By: Hon. Thomas T. Cullen<br>)     United States District Judge<br>) |
| Defendants. | ) |

Plaintiff Karen Turner sued Walmart Stores East, LP, and Walmart, Inc. (collectively "Walmart" or "Defendants"), claiming she slipped on a nail-polish spill and fell in the pharmacy aisle of Defendants' Martinsville store. Defendants have moved for summary judgment arguing, among other things, that they adequately warned of the spill by placing orange warning cones in the aisle and that, in any event, Turner's contributory negligence bars her claim as a matter of law. The court agrees and will grant the motion for summary judgment.

## I.   BACKGROUND

The following facts are either undisputed or presented in the light most favorable to Turner, the nonmoving party on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Henry v. Purnell*, 652 F.3d 524, 527 (4th Cir. 2011) (*en banc*). These operative facts are primarily established through Turner's deposition testimony.

After getting off work on the afternoon of April 17, 2020, Turner and her cousin went to the Martinsville Walmart to shop. They separated after entering the store, and Turner recalled that she turned to the left to get body soap in the pharmacy area. (Dep. of Karen

Turner 66:16–23, Jan. 6, 2021 [ECF Nos. 19-1 thru 19-4].) Turner, who was pushing an empty shopping cart, testified she "was walking really, really slow," as she made her way to the pharmacy area when, suddenly, she slipped and fell to the floor. (*Id.* at 63:16–17.) Although Turner testified that she did not see any wet substance on the floor prior to her fall, she observed nail polish that was "whitish" in color and in the form of two-foot wide "splash" on the floor after her fall. (*Id.* at 82:24–85:7.)

Several Walmart employees rushed to Turner's aid. According to Turner, as the employees were tending to her, they discovered a broken fingernail polish bottle and determined that the spill was "still wet and sticky." (*Id.* at 85:20–23.) Turner added that she felt the substance for herself and confirmed that it was "still wet." (*Id.*) Turner also recalled that an unidentified male employee stated, in her presence, that he had seen a customer drop the bottle. (*See id.* at 85:24–86:6.) According to Turner, an unidentified female Walmart employee—ostensibly a supervisor—berated this unidentified male employee for not addressing the spill properly. (*Id.* at 91:20–93:8.)

During her deposition, Walmart's counsel asked Turner a series of questions about the presence of two orange hazard cones in the immediate vicinity of the spill. When counsel asked Turner if she had noticed any "cones or signs" as she approached the area where she fell, Turner initially—and emphatically—denied that she had:

> I didn't see the sign. The sign was way down there. I didn't never see a sign. A sign was not up. The sign was not up. If I would have seen the sign, I would have went around. I'm looking for wet floor signs. I don't want to fall. I would have went around. There was never a sign up.

(*Id.* at 75:20–76:2.) Upon further questioning, Turner pivoted slightly, conceding that, after her fall, she had seen a "little wet floor sign" on the floor "past where the spill was." (*Id.* at 77:22–78:2.)

At this point, Walmart's attorney confronted Turner with the fact that the entire incident had been captured—at multiple angles—by overhead surveillance cameras. He then showed her a series of still images from these videos. The video footage clearly captures Turner's fall, as well as the aisle in question for one hour before and one hour after her fall.[1] (*See* Decl. of Chawn Linn Wood Ex. 1, Mar. 19, 2021 [ECF No. 19-6].) In sum, these videos show Turner approaching two orange warning cones from approximately nine feet away. Within seconds, Turner, who is pushing her cart at a noticeably fast pace, approaches the first orange warning cone. Without slowing down or diverting her approach, Turner drives the cart over the first orange cone and then steps directly on top of it. At this point, Turner's feet—and the cone—begin to slide across the floor, and she falls with the cone still under her feet. (*Id.*)

Using screenshots from these videos as exhibits, Walmart's counsel then asked Turner if she could see the cones that were depicted in the photographs. Turner acknowledged that she could. Defense counsel then returned to the topic of whether Turner had, in fact, seen the cones prior to her fall:

---

[1] The surveillance video shows that, in the hour preceding Plaintiff's fall, the cones were moved twice by unsuspecting customers. The first time, approximately 20 minutes before her fall, a customer bumped the cone a few inches in one direction. The second time, approximately two minutes before Plaintiff's fall, another customer knocked the cone one to two feet in the other direction. The second cone remained undisturbed during the entire hour preceding Plaintiff's fall. As a result, the space between the cones was ultimately about a foot or two wider than it was when the cones were placed initially. Accordingly, it is clear that the cone that was bumped twice ended up *closer* to Plaintiff when she approached and fell than it would have been had it been left undisturbed.

> Q: But you testified earlier that had you seen a cone, you would have gone around it?
>
> A: I would have. Even though, I'm talking about if it was sitting up, if the cone was sitting up like something is a spill right there. That cone was never sitting up.
>
> Q: You said there wasn't one there before.
>
> A: That's what I'm saying. I'm saying if I would have seen—like I told the workers that day, if I would have seen a regular cone sitting up—I don't know if that cone was broke[n] or what. I wasn't paying no attention because I fell before I got to it. I'm saying if I would have seen a cone sitting up now, sitting up properly, I would have went around that cone because I would have [known] it was a spill on the floor.
>
> Q: Let me understand your testimony. As you were walking towards where you ultimately slipped and fell, you did not see the cone that is the front cone that is depicted on Exhibit 1; is that correct?
>
> A: I might have . . . . I don't know. It happened so fast. Like I said, if I would have seen that cone sitting up, I would have went around it.
>
> Q: But my question is: Do you recall seeing the cone that's depicted—the front cone that's depicted in Exhibit 1 on the date of the incident as you approached?
>
> . . .
>
> A: If I would have seen it, yes. I'm pretty sure I probably would have seen it.
>
> Q: But you did see it?
>
> A: I might have . . . see[n] it, yes.

(Turner Dep. 101:21–103:7.)

Chawn Linn Wood, the asset-protection manager at the Martinsville store, investigated the incident immediately after Turner's fall. According to Wood, employees found a broken

- 4 -

bottle of nail polish "that was dry" and some paper towels on a shelf in the immediate vicinity. (Dep. of Chawn Linn Wood 10:24–11:1, Jan. 19, 2021 [ECF No. 19-5].) Wood testified that she ran her hand across the area of the floor where the fall had occurred, and "it was not slippery."[2] (Id. at 11:1–3.) Wood further testified that, as part of her investigation, she obtained and preserved the video surveillance footage of the incident as well as footage from the aisle in question for one hour preceding and following the fall, consistent with Walmart's policy. (*Id.* at 18:15–24.)

Plaintiff originally filed suit in state court on June 16, 2020, alleging a single count of negligence against Walmart. (*See* Compl. [ECF No. 1-1].) Walmart removed the case to this court on July 17. (Not. of Removal, July 17, 2020 [ECF No. 1].) Following discovery, Walmart filed the present motion for summary judgment on March 19, 2021. [ECF No. 18.] The matter was fully briefed by the parties, and the court heard oral argument on the motion on April 30, 2021. Following that hearing, Plaintiff filed a Motion for Sanctions for Spoliation of Evidence. [ECF No. 27.]

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on

---

[2] But Turner, as noted above, testified that the polish was still wet and slippery, and the court accepts her version as true in analyzing Walmart's motion for summary judgment.

file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary

judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

Even though summary judgment may be an appropriate tool to eliminate trial in some cases, it "must be used carefully so as not . . . to foreclose trial on genuinely disputed facts." *Thompson Everett, Inc. v. National Cable Adv., LP*, 57 F.3d 1317, 1322-23 (4th Cir. 1995). "The question at the summary judgment stage is not whether a jury is sure to find a verdict for the plaintiff; the question is whether a reasonable jury could rationally *so* find." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 334 (4th Cir. 2011) (emphasis in original).

### III. DISCUSSION

Walmart moves for summary judgment on the issues of its liability and Plaintiff's contributory negligence. The court will address each in turn.

### A. Premises Liability

Virginia law controls this diversity action. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938). A store owner, like Walmart, owes its customers a duty to exercise ordinary care in maintaining its premises. *Winn-Dixie Stores, Inc., v. Parker*, 396 S.E.2d 649, 650 (Va. 1990). This duty requires the owner of the premises to

> have the premises in a reasonably safe condition for [her] visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn [customers] of the unsafe condition if it was unknown to [it], but was, or should have been, known to the [owner].

*Colonial Stores v. Pully*, 125 S.E.2d 188, 190 (Va. 1962). But store owners are not guarantors of their customers' safety, and there is no duty to warn those customers of dangers that are "open and obvious to a person exercising reasonable care for [her] own safety." *Gottlieb v. Andrus*, 104 S.E.2d 743, 746 (Va. 1958).

To establish a prima facie case of negligence in this context, "the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 889 (Va. 1993). A plaintiff establishes actual notice when she establishes that the store owner was actually aware of the dangerous condition. *See Eure v. Kroger*, No. 7:11-cv-00190, 2012 WL 896347, at *5 (W.D. Va. Mar. 15, 2012). A plaintiff can establish constructive notice on the part of the store owner by pointing to "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Id.* at 890 (citing *Pulley*, 125 S.E.2d at 190.)

But this does not end the inquiry. "Even in cases of defects which are not open and obvious, a property owner discharges its duty if it adequately warns its customers of the unsafe condition." *Loomis v. Kroger Ltd. P'ship*, No. 2:14CV536, 2015 U.S. Dist. LEXIS 78546, at *9–10 (E.D. Va. June 17, 2015). Stated differently, "merely showing that a business owner had actual or constructive notice of a hazardous condition is not sufficient to demonstrate liability. Instead, the plaintiff must demonstrate that the defendant acted unreasonably in response to the hazardous condition of which it had notice." *Eure,* 2012 WL 869347, at *6.

Viewing the evidence in the record in the light most favorable to Turner, the court concludes that Walmart had actual notice of the spill.[3] The presence of the hazard cones in the immediate vicinity of the small broken bottle and Turner's testimony about the unidentified Walmart employees' statements about a prior spill certainly establish that Walmart was actually aware of the hazard.

But it is also undisputed that Walmart placed two orange warning cones in the aisle where the spill had occurred, and Turner eventually conceded at her deposition that she likely saw at least one cone prior to her fall. It is well established that placing warning signs or cones in the immediate vicinity of a spill is sufficient to satisfy the duty to provide adequate warning of a dangerous condition. *See, e.g.*, *Loomis*, 2015 U.S. Dist. LEXIS 78546, at \*9 (holding that placement of cones no more than two feet from where the plaintiff fell constituted adequate warning and granting summary judgment on that basis); *Wiley*, 2014 U.S. Dist. LEXIS 177136, at \*16 (concluding that placement of cone "within a very short distance of where the plaintiff fell" was an adequate warning and granting summary judgment on that basis); *Eure*, 2012 WL 896347, at \*7 (holding that placement of a cone "in the middle of the spill area" was an adequate warning and granting summary judgment, in part, on that basis).

Tuner nevertheless argues that Walmart's actions in this case were inadequate for two reasons. First, she contends—contrary to the video evidence—that "she did not slip on the cone, but slipped on the nail polish and slid into the cone as the wet nail polish was located in

---

[3] The parties dispute the cause of Plaintiff's fall: Plaintiff says it was the nail polish, but Walmart contends it was the cone. At summary judgment, the court takes the evidence in the light most favorable to Plaintiff and assumes—despite strongly contradictory video evidence—that Plaintiff slipped on spilled nail polish.

front of the cone." (Pl.'s Br. at 4.) In support of this argument, Turner points out that the video surveillance shows that another customer bumped into the cone before her fall, "pushing it away from its original location (next to the fingernail[-]polish spill)." (*Id.* at 5.) Turner is correct, but only to a point. Although two customers did touch the cone prior to her fall, these glancing blows only caused it to move slightly from its original location. Indeed, the second customer, as described above (*see supra* n.1), ultimately knocked the cone *back* towards its original position and, in fact, slightly further in that direction and ultimately *closer* to Plaintiff. Thus, accepting as true Turner's testimony that she slipped on the nail polish before stepping on the cone, the cone itself was still in the immediate vicinity of the spill and thus provided adequate warning. *Wiley*, 2014 U.S. Dist. LEXIS 177136, at *16 ("[T]he cone in the instant case was placed within a very short distance of where the plaintiff fell. Indeed, the footage shows that Wiley was so close to the cone that her body may have touched it during her fall."). Ultimately, whether a warning cone is sitting directly on top of the spill or positioned a foot or two away is immaterial; in either case, it provides ample warning of the nearby hazard as a matter of law.

Second, Turner argues that the cone at issue was "'broken or collapsed' and not 'sitting up properly' such that [she] could not see it." (Pl.'s Mem. in Opp. to Mot. for Summ. J. pg. 5, Apr. 2, 2021 [ECF No. 23].) But this argument is belied by Turner's own testimony. Although Turner initially maintained that she had not seen either warning cone prior to her fall, she eventually conceded, after being confronted with the video evidence, that she likely had. (Turner Dep. 102:3–103:7.) Moreover, Turner acknowledged that she was generally familiar with the purpose of warning cones, stating, "I'm looking for wet floor signs. I don't want to

fall." (*Id.* 75:24–76:1.) And Turner's argument that the cone itself may have been sitting lopsided or was "crumpled" is also unavailing. The video evidence, from multiple angles, clearly demonstrates that cone's presence and purpose were[4] and should have been obvious to anyone traversing that aisle.

In sum, because there is no genuine issue of material fact regarding whether Walmart provided an adequate warning of the spill, *see Fobbs v. Webb Bldg. Ltd. P'ship*, 349 S.E.2d 355, 357 (Va. 1986) (noting that an owner is required to "warn its invitee of any unsafe condition"), and because there is no evidence from which a juror could find negligence on its part under these circumstances, the court will grant summary judgment on the issue of liability.

### B. Contributory Negligence

Turner's contributory negligence in pushing her shopping cart directly over, and then stepping squarely on top of, an orange safety cone also bars her recovery as a matter of law. Although contributory negligence is typically an issue for the jury, courts can resolve it "when there are no conflicting facts, and no reasonable controversy on the inferences fairly drawn from the facts." *Dale v. Va. CVS Pharm.*, No. 7:19CV578, 2021 U.S. Dist. LEXIS 6664, at *7 (W.D. Va. Jan. 13, 2021) (citing *Webber v. Speed Channel, Inc.*, 472 F. Supp. 2d 752, 756–57 (E.D. Va. 2007). "A person who trips and falls over an open and obvious condition or defect is guilty of contributory negligence as a matter of law." *Scott v. City of Lynchburg*, 399 S.E.2d 809, 810 (Va. 1950). Stated differently, a plaintiff cannot "walk blindly into a dangerous condition which is open and obvious to a person in the exercise of ordinary care and then claim to be

---

[4] Indeed, the video demonstrates that numerous customers safely steered their carts around the same cone prior to Turner's encounter with it.

blameless." *Gall v. Great Atlantic & Pacific Tea Co.*, 120 S.E.2d 378, 380 (Va. 1961). And a plaintiff's contributory negligence acts as a complete bar to recovery. *Dale*, 2021 U.S. Dist. LEXIS 6664, at *8 (citing *Fein v. Wade*, 61 S.E.2d 29, 32 (Va. 1950)).

Although, as noted above, the spilled nail polish was difficult to see, the orange safety cone wasn't. Turner reluctantly conceded, when confronted with the video evidence, that she likely saw the cone prior to the fall and, moreover, that she understood the presence of such cones typically indicated slippery or hazardous conditions. Despite all this, the undisputed evidence indicates that Turner, for whatever reason, disregarded this warning and proceeded over the spill (and the cone). She did so at her own peril, and these actions bar her recovery in this case. *See Dale*, 2021 U.S. Dist. LEXIS 6664, at *9 ("Here, Dale knew the curb was there, and should have been aware of the risk of pushing a loaded shopping cart over a curb."); *Joseph v. Target Stores, Inc.*, No. 1:19CV614, 2020 U.S. Dist. LEXIS 115071, at *8 (E.D. Va. June 30, 2020) ("Even when construing the evidence most favorably to Plaintiff, as the Court must, the Court finds that the puddle was 'open and obvious' and that Plaintiff failed to exercise reasonable care for her own safety."); *Logan v. Boddie-Noell Enters.*, No. 4:11CV8, 2012 U.S. Dist. LEXIS 5345, at *29 (W.D. Va. Jan. 18, 2012) ("A plaintiff who slips and falls as a result of an open and obvious danger is guilty of contributory negligence.").

**C. Motion for Sanctions for Spoliation of Evidence**

As a last-ditch effort to avoid summary judgment, Plaintiff belatedly argues that Walmart "intentionally destroyed" video evidence showing how the spill came to be on the floor and where it was located in relation to the two orange warning cones. She contends that, because Walmart only kept video from an hour before her fall but not video showing how the

spill originally came to be, its actions have scuttled her opportunity to prove where the nail polish was and to show that the warning cones were not placed near the spill. This argument is flawed in many respects.

Spoliation "'refers to the destruction or material alternation of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 803 F. Supp. 2d 469, 496 (E.D. Va. 2011) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). In evaluating a spoliation claim, courts employ a two-part test. First, the party alleging spoliation must show "that the adverse party had a duty to preserve documents or materials that may be relevant to the litigation or pending litigation." *Id.* "A party that anticipates litigation . . . is 'under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery or admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.'" *Id.* (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 543 (E.D. Va. 2006)). If the court finds that such a duty existed, it must "then consider whether the party breached this obligation, either by failing to preserve, or by destroying or altering, relevant materials or documents with a culpable state of mind." *Id.* at 497. "In the Fourth Circuit, any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence, suffices to support a finding of spoliation." *Id.*

As a preliminary matter, despite going all the way through discovery, Plaintiff failed to raise this issue before the hearing on Walmart's motion for summary judgment. The next day, she filed a motion for sanctions based on this alleged spoliation of evidence. Federal Rule of

Civil Procedure 56 makes very clear the steps a party should take if it cannot produce evidence to support or defend against a motion for summary judgment:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery;
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). Plaintiff did not comply with this rule; a *post hoc* motion for sanctions is neither an affidavit nor a declaration. Moreover, she has not offered any evidence why, without additional video, she has been unable to depose Walmart employees regarding the spill or the relative placement of the cones.[5]

But were the court to accept her position that Walmart destroyed relevant video evidence, it would not result in a different outcome. Although Plaintiff does not request a specific sanction beyond asserting that "Walmart should not now be allowed to obtain summary judgment based on a selected portions [*sic*] of its video after intentionally failing to preserve those portions relevant to Turner's case," the court assumes that an appropriate sanction would be a finding instruction that there was nail polish on the floor and Walmart is charged with notice of it. As discussed above, however, the evidence presented establishes that Walmart had actual notice of the spill, and the court assumed as much in analyzing Walmart's motion for summary judgment.

---

[5] In fact, the video shows Plaintiff falling *forward*, landing *between* the two warning cones. In her deposition, she said that, *while she was on the floor*, she could feel the nail polish and that nail polish was on the pants after the fall. (*See* Turner Dep. 74:6–9; 82:1–4; 87:2–8.) In fact, she said explicitly that "the fingernail polish was right there in front of that cone." (*Id.* 101:19–20.)

But turning to the merits of Plaintiff's spoliation motion, her claims of intentional, wrongful conduct are simply unsupportable. She contends that Walmart "intentionally deleted relevant video evidence after learning of the plaintiff's accident." Chawn Wood, the asset-protection manager, testified that, based on the video evidence, she determined that Turner had fallen after stepping on a hazard cone. (Wood Dep. 18:8–10.) Accordingly, Wood concluded that the incident at issue was the cone encounter and, consistent with Walmart policy, she preserved video for one hour preceding and one hour following that mishap. (*See* Defs.' Answers to Pl.'s Second Interrogatories n.1–3 [ECF No. 28-1].) Although one could argue that Walmart should have taken a wider view of the accident and preserved more video, the court cannot conclude that its failure to do so here, based on what appeared to be irrefutable video evidence of the cause of Tuner's fall (stepping on the cone), that Walmart breached its duty to preserve relevant evidence.

In any event, additional video evidence would not alter the outcome. Turner argues that, because Walmart didn't preserve additional video, the location of the spilled nail polish is not ascertainable, and thus she cannot show that the warning cones were not placed in a location to adequately warn her of the danger. But this contention is also belied by the record. Turner testified (and the court accepted) that she slipped on the nail polish immediately before sliding into the cone. As Turner put it: "I slid in on that cone, but that fingernail polish was right there. I did not slip on that cone. I slipped on that nail polish. . . . I might have . . . slid in on the cone and hit the cone, but I had slipped up before I got to that cone. I might have . . . knock[ed] the cone a little further down when I fell, *but the fingernail polish was right there in front of that cone.*" (Turner Dep. 101:8–11; 101:16–20 (emphasis added).) Although the video

evidence shows otherwise, the court will again give Turner the benefit of the doubt. But if Turner slipped before stepping on the cone, these two events were only nanoseconds apart. Plaintiff cannot rise above her own testimony and the video evidence, all of which lead to the ineluctable conclusion that the spill—or at least the outer portion of it—was, *at most*, mere inches in front of the cone. As detailed above, that means that cone was in the immediate vicinity of the spill, such that it provided an adequate warning.

For these reasons, no sanctions or finding instruction is necessary. Plaintiff failed to establish that Walmart breached the standard of care it owed to Plaintiff, and her motion for sanctions is untimely and meritless.

## IV. CONCLUSION

For these reasons, the court will grant Walmart's motion for summary judgment. The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 5th day of May, 2021.

                                                                    */s/ Thomas T. Cullen*
                                                                    HON. THOMAS T. CULLEN
                                                                    UNITED STATES DISTRICT JUDGE